## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COLONIAL SURETY COMPANY, ) | |
| ) | |
| Plaintiff, ) | Case Number: |
| ) | |
| v. ) | |
| ) | |
| RETIREMENT SOLUTIONS ADVISORS, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff, Colonial Surety Company ("Colonial"), by and through its counsel, submits the following Complaint and alleges as follows:

### INTRODUCTION

1.     This action arises out of a claim for insurance coverage submitted to the Plaintiff, Colonial Surety Company ("Colonial"), by the Defendant, Retirement Solutions Advisors, LLC ("RSA"), in connection with litigation commenced in September 2019 against RSA in Jessamine Circuit Court, Commonwealth of Kentucky, bearing civil action number 19-CI-00623 and styled as Kenney Ortho Group, Inc. v. Retirement Solutions Advisors, LLC, et als. (the "Kenney Complaint" and the "Kenney Litigation").

2.     The Kenney Complaint was filed only after a series of written demands by the plaintiff, Kenney Ortho Group, Inc. ("Kenney"), to RSA, beginning at least as early as July 20, 2017, describing certain purported errors made by RSA in its capacity as a service provider for the Kenney Orthopedics 401(k) Plan (the "Plan"), and asserting that "RSA should be responsible for the costs associated with the correction of these errors ... [and] costs and legal fees associated with the [submission of the Plan's purported errors to the Internal Revenue Service's Voluntary Correction Program] and related corrections."

1

3.      On October 9, 2019, more than two years after Kenney first made a Claim against RSA, RSA tendered to Colonial notice of the Kenney Complaint under a claims-made policy of professional liability insurance bearing policy number 5R8002353E0 (the "Policy"), seeking coverage, including a defense, with respect to the allegations and claims made against RSA in the Kenny Litigation.

4.      Via correspondence dated November 15, 2019, Colonial denied coverage for RSA's claim under the Policy (the "Declination Letter"), because, inter alia: (i) the Claim against RSA was not first made during the policy period of May 11, 2018 to May 11, 2019; (ii) the Claim against RSA does not allege "Professional Services"; (iii) RSA failed to comply with the Policy's mandatory notice provision; (iv) certain categories of damages sought in the First, Second, and Third Demand Letters and/or Kenney Complaint do not constitute covered Losses; (v) certain policy exclusions operated to preclude coverage for the Claim against RSA; (vi) RSA breached its duties in the event of a claim; and (vi) RSA made material representations in the application for coverage under the Policy.

5.      While RSA did not expressly seek coverage under any policy of insurance issued by Colonial other than the Policy, via the Declination Letter and out of an abundance of caution, Colonial also denied coverage for the Claim against RSA under the policy of insurance issued to RSA for the preceding policy period of May 11, 2017 to May 11, 2018, bearing policy number 4R8002353E0 (the "Preceding Policy") because, inter alia: (i) RSA failed to comply with the Preceding Policy's mandatory notice provision; (ii) the Claim against RSA does not allege "Professional Services"; (iii) certain categories of damages sought in the First, Second, and Third Demand Letters and/or Kenney Complaint do not constitute covered Losses; and (iv) certain policy exclusions operated to preclude coverage for the Claim against RSA.

2

6.      Colonial now commences the instant action, seeking declarations that no coverage exists for RSA's claim under the Policy, that the Policy is void ab <u>initio,</u> and that no coverage exists under the Preceding Policy.

## PARTIES

7.      Plaintiff Colonial is a corporation organized under the laws of the state of Pennsylvania, having its principal place of business at 123 Tice Boulevard in Woodcliff Lake, New Jersey, and authorized to do business in the State of Illinois.

8.      Defendant RSA is an Illinois limited liability company with a principal place of business at 410 Grand Avenue, Suite 1B, Chicago, Illinois 60654.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332(a) because Plaintiff Colonial is a citizen of a different state than Defendant RSA and the matter in controversy, which involves a claim for insurance coverage on a policy(ies) of insurance with a limit of liability of $1,000,000 arising out of allegations that RSA should be responsible for the payment of damages to Kenney in excess of $75,000.

10.      This Court also has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 because, among the relief sought herein, Plaintiff Colonial seeks judicial declarations pursuant to 28 U.S.C. § 2201 with respect to the parties' respective rights, duties, and obligations pursuant to the policy(ies) of insurance under which Defendant RSA has submitted a claim for coverage.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant RSA is a resident of the State of Illinois and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred there.

## BACKGROUND

12.     Defendant RSA is a service provider for employee benefit plans and businesses that sponsor them.

13.     Upon information and belief, Steve Johnson is RSA's managing director and/or managing member and has served in that capacity since RSA was formed in 2007.

14.     At all times relevant hereto, Mr. Johnson was authorized to act on behalf of RSA and to bind RSA in contract.

15.     Upon information and belief, in 2013, Defendant RSA began performing, inter alia, certain third-party administration services for the Plan.

16.     In 2013, Colonial began issuing policies of, inter alia, professional liability insurance to RSA.

17.     Between 2013 and 2019, RSA applied for and Colonial issued renewals of RSA's professional liability insurance, including the Preceding Policy, with a policy period of May 11, 2017 to May 11, 2018, and the Policy, with a policy period of May 11, 2018 to May 11, 2019.

**A.      The July 20, 2017 Demand Letter**

18.     On or around July 20, 2017, RSA was sent a letter by counsel for Kenney purporting to describe the discovery of "several areas in which the operation of the Plan was not in accordance with its documents or not in compliance with the rules governing qualified retirement plans" (the "First Demand Letter"). A copy of the First Demand Letter is attached hereto as Exhibit A.

19.     The First Demand Letter was sent to RSA during the policy period of the Preceding Policy.

20.     The First Demand Letter purports to describe Kenney's review of the Plan, the identification of "the aforesaid errors," determination of "the appropriate correction of same in accordance with the guidelines of the [IRS,]" and a submission "to the IRS under its Voluntary Correction Program" on or around July 11, 2017.

21.     The First Demand Letter purports to describe two different categories of purported errors: (1) "technical compliance issues"; and (2) "errors related to the design of the Plan."

22.     Among the alleged "technical compliance issues" referenced in the First Demand Letter are: (i) the purported premature withholding of elective deferrals "prior to execution of the Plan" and the deposit of those elective deferrals "months later after the Plan was signed" (the "Elective Deferral Error"); and (ii) "the mid-year restatement of the Plan (a safe-harbor plan) in August of 2015" (the "Mid-Year Restatement Error").

23.     According to Kenney in the First Demand Letter, "these [purported technical compliance] errors are solely the responsibility of ... RSA [and a co-defendant named in the Kenney Litigation] and they should be responsible for the costs associated with the correction of these errors and the VCP submission."

24.     Among the alleged "errors related to the design of the Plan" referenced in the First Demand Letter are: (i) designing the Plan with a six-month eligibility period in the plan document "even though [Kenney] requested a one-year eligibility period ... [and] operated the [P]lan with a one-year eligibility period" (the "Eligibility Period Error"); and (ii) drafting the Plan "with a safe harbor 3% nonelective contribution rather than a safe-harbor matching contribution ... [which] was not in accordance with [Kenney's] instructions" (the "3% Contribution Error").

25. According to Kenney in the First Demand Letter, "RSA [and a co-defendant named in the Kenney Litigation] are solely responsible for most of the errors identified and should be responsible for the costs associated with the correction of these errors ... RSA [and the aforesaid co-defendant] should [also] be responsible for costs and legal fees associated with the VCP submission and related corrections."

26. Kenney's counsel concluded the First Demand Letter with a directive that "[o]nce you have an opportunity to review this matter, please contact me to discussion the position of ... RSA in addressing these issues."

27. On or around July 21, 2017, RSA was sent another letter by counsel for Kenney, purportedly in follow-up to the First Demand Letter, purportedly enclosing "information which [Kenney's counsel] inadvertently failed to include in [their] letter dated July 20, 2017."

**B.**   **The March 6, 2018 Demand Letter**

28. On or around March 6, 2018, RSA was sent another letter by counsel for Kenney restating the substance of the First Demand Letter, including inter alia, express reference to the Eligibility Period Error, and 3% Contribution Error (the "Second Demand Letter"). A copy of the Second Demand Letter is attached hereto as Exhibit B.

29. The Second Demand Letter was also sent to RSA during the policy period of the Preceding Policy.

30. The Second Demand Letter itemized the categories of alleged damages incurred by Kenney in connection with the purported deficiencies in the Plan and its VCP submission, for a total of $133,426.86, plus amounts still to be determined.

31. Those itemized categories of purported damages included: (i) lost earnings through December 31, 2016 in an amount of $27,347.57; (ii) lost earnings for the 2017 and 2018

plan years in an amount to be determined; (iii) additional contributions due as of December 31, 2016 in an amount of $67,742.29; (iv) additional contributions due for the 2017 and 2018 plan years in an amount to be determined; (v) legal expenses in connection with the VCP submission (as of 12/31/16) in an amount of $37,587; (vi) legal expenses in connection with the VCP submission (for 2017 and 2018) in an amount to be determined; and (vii) user fee for VCP application in an amount of $750.

32. According to Kenney in the Second Demand Letter, "RSA [and a co-defendant named in the Kenney Litigation] are solely responsible for most of the errors identified and should be responsible for the costs associated with the correction of these errors."

33. Specifically, Kenney contends that RSA "should be responsible for costs and legal fees associated with the VCP submission and the related corrections and lost earnings in the amount of $133,426.86, plus the additional earnings and prorate legal fees to complete this process."

34. Kenney's counsel concluded the Second Demand Letter by stating that Kenney "must move quickly to resolve and correct these matters and will pursue whatever recourse it has available to do so" and, again, directing that "[o]nce you have an opportunity to review this matter, please contact me to discuss the position of ... RSA in addressing these issues."

**C.**     **RSA's April 23, 2018 Response to the March 6, 2018 Demand Letter**

35. On or around April 23, 2018, RSA sent correspondence to Kenney's counsel (the "RSA Demand Response"). A copy of the RSA Demand Response is attached hereto as Exhibit C.

36. The RSA Demand Response was sent by RSA to Kenney during the policy period Preceding Policy.

———

7

37.     In the RSA Demand Response, Mr. Johnson, RSA's Managing Director, admitted that RSA had "received [Kenney's counsel's] letter dated July 20, 2017 and most recent correspondence dated April 12, 2018 regarding the Kenney Orthopedics 401(k) Plan."

38.     In the RSA Demand Response, Mr. Johnson stated that RSA was "not willing to accept [Kenney's] demand for reimbursement of plan contributions and legal fees requested in your letter."

39.     In the RSA Demand Response, Mr. Johnson admitted:

> We have been aware of the issues for some time. I participated in several phone conference calls with David Hudson and one phone conference call which included Dr. Kenney to review the company's concerns and discuss possible options to move forward.
>
> My phone conference calls ... included a discussion of the option of correcting the safe harbor match and eligibility errors by utilizing the IRS voluntary Compliance Program. This discussion included an offer that Retirement Solutions Advisors, LLC provide assistance with the preparation of the VCP submission, including potential fees for our services to assist with the VCP submission. We have assisted other clients with various types of IRS VCP submissions. Our fees associated with the VCP submission would have been substantially less than the fees paid by [Kenney] as detailed in your letter.

40.     The aforesaid "safe harbor match and eligibility errors" referenced in the RSA Demand Response are the same Eligibility Period Error and 3% Nonelective Contribution Error referenced in the First Demand Letter and Second Demand Letter.

**D.     The July 19, 2018 Demand Letter**

41.     On or around July 19, 2018, RSA was sent another letter by counsel for Kenney (the "Third Demand Letter"). A copy of the Third Demand Letter is attached hereto as Exhibit D.

───

42.     The Third Demand Letter was sent to RSA after the expiration of the Preceding Policy on May 11, 2018, but before RSA submitted its application for renewal of the Preceding Policy on July 24, 2018 and Colonial issued the Policy.

43.     The Third Demand Letter purports to respond to the RSA Demand Response.

44.     The Third Demand Letter restates, in large part, the substance of the First Demand Letter and Second Demand Letter, including inter alia, express references to the Elective Deferral Error, Eligibility Period Error, Mid-Year Restatement Error, and 3% Contribution Error.

45.     In the Third Demand Letter, counsel for Kenney asserts that "RSA was well aware that Kenny [sic] Orthopedics questioned the design features of the Plan almost immediately as indicated in several emails."

46.     Therein, counsel for Kenney specifically references a series of emails dated April 23, 2013, August 26, 2014, and September 29, 2014, which purportedly "clearly prove that Kenney Orthopedics continuously questioned the plan design issues and that RSA was well aware of these issues going back to 2013."

47.     Kenney's counsel concluded the Third Demand Letter by advising RSA that "[a]lthough [Kenney] would prefer to resolve these issues without resorting to protracted litigation, as you can see, [Kenney] has more than enough evidence to proceed with legal recourse on its claims if this cannot otherwise be settled. We trust that you will revisit RSA's position with respect to this matter."

E.     RSA Applies for Renewal of the Preceding Policy and Colonial Issues the Policy

48.     On or around May 9, 2018, RSA began the process of applying for renewal of the Preceding Policy, which was set to expire on May 11, 2018.

49.     The Preceding Policy expired on May 11, 2018.

50.     RSA did not complete the process of applying for renewal of the Preceding Policy until July 24, 2018, when the renewal application was electronically submitted to Colonial.

51.     In the renewal application, RSA was posed several questions regarding its claims history.

52.     RSA did not disclose the First Demand Letter, the Second Demand Letter, or the Third Demand Letter in its responses to those questions.

53.     Specifically, RSA answered "no" in response to the electronic application question of "[h]as any Professional Liability claim(s), complaint or proceeding been made against the Applicant or any person or organization proposed for this insurance or any predecessor organization?"

54.     This response was untruthful.

55.     Specifically, in the field within the electronic application requesting information regarding "Claims Litigation," RSA responded by stating "No Claims."

56.     This response was untruthful.

57.     Specifically, RSA answered "no" in response to the electronic application question of "[d]oes any person(s) proposed for this insurance have knowledge or information of any fact, error, omission, circumstance or situation that might provide grounds for any claim under the proposed insurance?"

58.     This response was untruthful.

59.     In fact, when RSA submitted its electronic renewal application on July 24, 2018, it (i) was aware of, inter alia, Kenney's allegations regarding the Elective Deferral Error, Eligibility Period Error, 3% Nonelective Contribution Error, and Mid-Year Restatement Error;

(ii) had received the First Demand Letter, the Second Demand Letter, and the Third Demand Letter; (iii) had responded to Kenney's demands in the RSA Demand Response, dated April 23, 2018; and (iv) understood Kenney to have demanded "reimbursement of plan contributions and legal fees."

60.     Colonial relied upon RSA's aforesaid misrepresentations in offering renewal terms to RSA and opting to issue the Policy.

61.     RSA's misrepresentations were material to Colonial's decision to issue the Policy, under which RSA now seeks coverage, and were material to risks to be insured against thereunder.

62.     Had RSA been truthful in its application and disclosed the existence of the Claims against it by Kenney, Colonial would not have issued the Policy, would not have offered the same renewal terms, policy terms, per-claim deductible, and/or, at a minimum, charged the same premium.

63.     On July 24, 2018, relying upon the misrepresentations in RSA's renewal application, Colonial was induced to issue the Policy to RSA and to offer RSA a policy with an effective date of May 11, 2018.

F.     Commencement of the Kenney Litigation

64.     On or around September 27, 2019, the Kenney Complaint was filed in the Jessamine Circuit Court, Commonwealth of Kentucky, against RSA and co-defendants Legacy Consulting Group, LLC ("Legacy"), Security Benefit Business Services, LLC ("Security Benefit"), Money Concepts International, Inc. ("MCI"), and David W. Hudson. A copy of the Kenney Complaint is attached hereto as Exhibit E.

65.     In the Kenney Complaint, Kenney alleges that a co-defendant, Legacy, engaged the services of RSA ... to advise and assist on the design, preparation, implementation and operation of the 401(k) Plan." Exhibit E, Kenney Complaint, ¶ 11.

66.     According to the Kenney Complaint, Kenney instructed Legacy "to replicate certain long-standing features of [Kenney's prior Simple 401(k) plan] in the 401(k) Plan." Exhibit E, Kenney Complaint, ¶ 12.

67.     According to the Kenney Complaint, among the plan features purportedly included in Kenney's instructions to Legacy were "(i) employee pre-tax deferral; (ii) employer matching contribution of 100% of the employee deferral up to a maximum of 3% of the employee compensation; and (iii) one-year waiting period to become eligible to participate." Exhibit E, Kenney Complaint, ¶ 12.

68.     According to the Kenney Complaint, Legacy "advised [Kenney] that they instructed RSA ... to 'design the plan to mirror the company's benefit with a 1 year employment eligibility and a 3% matching contribution for those who participated.'" Exhibit E, Kenney Complaint, ¶ 12.

69.     In the Kenney Complaint, Kenney alleges that "[d]efendants failed to properly design, establish, implement and operate the 401(k) according to [Kenney's] specific instructions and also made significant errors in violation of the technical requirements of a safe-harbor 401(k)." Exhibit E, Kenney Complaint, ¶ 13.

70.     At Paragraph 13a of the Kenney Complaint, Kenney describes a purported error to be the premature withholding of elective deferrals "prior to execution of the 401(k) Plan" and their subsequent "deposit in the 401(k) Plan trust months later after the 401(k) Plan was signed" in violation of law and "the IRS's rules and regulations."

71.     The error described at Paragraph 13a of the Kenney Complaint is the same error referenced herein at paragraph 22 as the Elective Deferral Error and is specifically referenced in the First Demand Letter, implicitly referenced among the plan errors included in the Second Demand Letter, and specifically referenced again in the Third Demand Letter.

72.     At Paragraph 13b of the Kenney Complaint, Kenney describes a purported error to be the drafting of the Plan to include a six-month eligibility period "even though [Kenney] requested a one-year eligibility period" and "operated the [Plan] with a one-year eligibility requirement." This purported error is referenced in the Kenny Complaint as the "Eligibility Issue."

73.     The error described at Paragraph 13b of the Kenney Complaint and referenced therein as the "Eligibility Issue" is the same error referenced herein at paragraph 24 as the Eligibility Period Error and is specifically referenced in the First Demand Letter, Second Demand Letter, the RSA Demand Response, and Third Demand Letter.

74.     At Paragraph 13c of the Kenney Complaint, Kenney describes a purported error to be the drafting of the Plan "with a safe-harbor 3% nonelective contribution rather than a safe-harbor matching contribution ... [which] required Kenney Orthopedics to operate the 401(k) Plan with a matching contribution rather than a nonelective contribution." This purported error is referenced in the Kenny Complaint as the "Contribution Issue."

75.     The error described at Paragraph 13c of the Kenney Complaint and referenced therein as the "Contribution Issue" is the same error referenced herein at paragraph 25 as the 3% Contribution Error and specifically referenced in the First Demand Letter, Second Demand Letter, the RSA Demand Response, and Third Demand Letter.

76.     At Paragraph 13d of the Kenney Complaint, Kenney describes a purported error as involving an "ambiguity which caused them to believe the Safe-Harbor matching contributions would be used."

77.     The error described at Paragraph 13d of the Kenney Complaint involving the design of the Plan with a 3% nonelective contribution rather than a safe-harbor matching contribution implicates the same error referenced herein at paragraph 24 as the 3% Contribution Error and is specifically referenced in the First Demand Letter, Second Demand Letter, the RSA Demand Response, and Third Demand Letter.

78.     At Paragraph 18 of the Kenney Complaint, Kenney describes a purported error to be the violation of "the IRS's technical requirement that a safe-harbor 401(k) plan could not be amended during the year, which further delayed the effective date of the restatement and added to the mounting correction costs incurred by [Kenney]." This purported error is referenced in the Kenny Complaint as the "Safe-Harbor Issue."

79.     The error described at Paragraph 18 of the Kenney Complaint and referenced therein as the "Safe-Harbor Issue" is the same error referenced herein at paragraph 24 as the Mid-Year Restatement Error and specifically referenced in the First Demand Letter and Third Demand Letter.

80.     The Kenney Complaint contains four purported causes of action, plead against all defendants, RSA among them, and include: (i) Breach of Contract at Count 1; (ii) Negligent Misrepresentation at Count 2; (iii) Fraud at Count 3; and (iv) Breach of Fiduciary Duty at Count 4.

81.     The Breach of Contract claim at Count 1 of the Kenney Complaint is predicated upon the allegation that "[d]efendants failed to implement the Plan as agreed between the parties

and instead caused a host of errors ... [and] continued to breach the contract in 2015 when its erroneous corrections to the Plan violated the IRS's technical requirements." Exhibit E, Kenney Complaint, TT 27-28.

82.    The Negligent Misrepresentation claim at Count 2 of the Kenney Complaint is predicated upon allegations that "[d]uring [d]efendants' implementation of the Plan, they provided false and misleading information and omitted material facts in its [sic] dealings with

[Kenney]." Exhibit E, Kenney Complaint, ¶ 31.

83.    Kenney contends that these purported misrepresentations "creat[ed] the Eligibility Issue and the Contribution Issue" and that "[d]efendants also misrepresented and provided inconsistent information related to its amendment to the Plan thereby creating the Safe-Harbor

Issue." Exhibit E, Kenney Complaint, ¶ 32.

84.    The Fraud claim at Count 3 of the Kenney Complaint is predicated upon allegations that "[d]efendants have made numerous misrepresentations to [Kenney] regarding both their own expertise and experience in the field and the Plan itself, thereby creating the Eligibility Issue, the Contribution Issue, and the Safe-Harbor Issue. Exhibit E, Kenney Complaint, ¶ 36.

85.    The Breach of Fiduciary Duty claim at Count 4 of the Kenney Complaint is predicated upon allegations that "[d]efendants breached their fiduciary duties by, among other things, causing the Eligiblity Issue, the Contribution Issue, and the Safe-Harbor Issue." Exhibit

E, Kenney Complaint, ¶ 44.

86.    The Kenney Complaint concludes with a seven-paragraph ad <u>damnum</u> section, identifying purported damages that include: (i) judgment against each Defendant; (ii) compensatory damages; (iii) punitive damages; (iv) an award of costs, including attorney's fees;

(v) prejudgment and post-judgment interest; (vi) a jury trial; and (vii) all other relief to which it may be entitled.

**G.      RSA Tenders Notice of Claim to Colonial**

87.      On October 9, 2019, RSA sent an email to Colonial bearing subject line "Retirement Solutions Advisors, LLC #5R8002353E0" (the "Claim Email") for the purpose of "advis[ing] Colonial Surety that our firm has been named in a lawsuit by a former client of Retirement Solutions Advisors." A copy of the Claim Email is attached hereto as Exhibit F.

88.      Later that day, RSA provided Colonial's counsel with a copy of the Kenney Complaint.

89.      Via email dated October 10, 2019, RSA provided Colonial's counsel with a copy of materials that included: (i) the First Demand Letter; (ii) the Second Demand Letter; (iii) the RSA Demand Response; and (iv) the Third Demand Letter.

90.      Via letter dated November 15, 2018, Colonial denied RSA's claim for coverage under both the Policy and the Preceding Policy.

**CLAIMS FOR RELIEF**

**COUNT ONE - DECLARATORY JUDGMENT**
**(Declaration of No Coverage Under the Policy)**

91.      Colonial realleges and incorporates by reference the preceding allegations as if fully set forth herein.

92.      By virtue of RSA's Claim Email, RSA has submitted a claim to Colonial purportedly seeking coverage under the Policy.

93.      There is a disagreement, dispute, and justiciable controversy between Colonial and RSA as to whether the Policy affords coverage to RSA for the claim, which is ripe and appropriate for judicial determination.

94. The Policy contains a policy period spanning from May 11, 2018 to May 11, 2019.

95. The E&O Coverage Part of the Policy contains an insuring agreement at Section I, therein, which provides, in pertinent part:

> The Company will pay on behalf of an Insured a Loss which such Insured becomes legally obligated to pay on account of any Claim first made against such Insured during the Policy Period ... for a Wrongful Act in the performance of or failure to perform Professional Services for others in the conduct of the Named Insured's profession as an Employee Benefit Plan Administrator; but not when acting as an ERISA Fiduciary.

96. The E&O Coverage Part defines the term "Loss" to mean, in pertinent part:

> D. Loss means the amount that an Insured becomes legally obligated to pay on account of any Claim, including but not limited to damages, judgments, settlements, and Defense Expenses; provided, however, Loss shall not include:
>
> (1) punitive or exemplary damages or the multiplied portion of multiplied damages;
>
> (2) any costs incurred by an Insured to comply with any order for injunctive or other non-monetary relief, any agreement to provide such relief, or any regulatory or administrative directive;
>
> (3) taxes, fines, or penalties imposed on an Insured;
>
> (4) any amount not insurable under the law pursuant to which this Policy is construed;
>
> (5) regular or overtime wages, salaries, or fees of Insured Persons; or
>
> (6) that portion of Loss that represents the return of fees, charges, commissions or other compensation paid to an Insured.

97. The E&O Coverage Part defines the term "Claim" to mean, in pertinent part:

(1)    a written demand against an Insured for monetary, non-monetary or injunctive relief;

(2)    a civil proceeding against an Insured for monetary, non-monetary or injunctive relief which is commenced by service of a complaint or similar pleading; ...

for an actual or alleged Wrongful Act.

98.    The E&O Coverage Part defines the term "Wrongful Act" to mean "[a]ny error, misstatement, misleading statement, act omission, neglect, or breach of duty committed, attempted, or alleged committed or attempted by an Insured or by any entity or natural person for whose acts the Insured becomes legally liable, but only in connection with the Insured's performing or failure to perform Professional Services."

99.    The E&O Coverage Part defines the term "Professional Services" to mean, in pertinent part:

(1)    preparing, printing, and distributing reports to Employee Benefit Plan sponsors, fiduciaries, participants, beneficiaries or government agencies;

(2)    calculating the net asset values, vested values and investment performance of the Employee Benefit Plan, whether in whole, in part or by participant;

(3)    maintaining the books and records of the Employee Benefit Plan;

(4)    providing a facility for the Employee Benefit Plan to receive instructions from plan participants;

(5)    providing statistical data to the Employee Benefit Plan;

(6)    providing budget and control services to the Employee Benefit Plan;

(7)    providing data processing and clerical support to the Employee Benefit Plan; or

($^8$)    performing testing such as non-discrimination and top heavy testing;

for or on behalf of an Employee Benefit Plan pursuant to a written contract between such Employee Benefit Plan and such Employee Benefit Plan Administrator for consideration.

100.    At Section VII.A.(1) of the Policy's General Terms and Conditions, there is a mandatory notice provision, which provides, in pertinent part:

As a condition precedent to the obligations of the Company under this Policy, the Insured shall give written notice to the Company of a Claim made against an Insured as soon as practicable after the Insured first becomes aware of such Claim, but in no event later than 60 days after the end of the Policy Period unless the Optional Extended Report Period is exercised.

The Insured must include with any notice of Claim a description of the Claim, the nature of the alleged Wrongful Act, a summary of the facts upon which the Claim is based, the nature of the alleged damage, the names of the Claimants, the names of the Insureds against whom Claim is made, the manner in which the Insured first became aware of the Claim and any documents received directly by the Insured or by the Insured's representatives in connection with the making and handling of the Claim, such as letters, demands, or summonses.

101.    Section V.G of the Policy's General Terms and Conditions provides, in pertinent part, that 141 Claims based upon or arising out of the same Wrongful Act or Interrelated Wrongful Acts will be treated as a single Claim made when the earliest such Claim was first made.

102.    The Policy defines the term "Interrelated Wrongful Acts" to mean "Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes."

103.    At Section VII.B(2) of the General Terms and Conditions, pertaining to the assistance and cooperation of the Insured, the Policy provides, in pertinent part:

19

> The Insured will not, except at the Insured's own cost, voluntarily make any payment, assume any obligation, incur any expenses, or admit any liability in connection with any Claim, incur any Defense Expenses, or settle any Claim without the written consent of the Company. The Insured will not take any action which may increase the Company's exposure under this Policy.

104.     The Policy does not provide coverage for RSA's claim because, inter alia, (i) the Claim against RSA was not first made during the policy period of May 11, 2018 to May 11, 2019; (ii) the Claim against RSA does not allege "Professional Services"; (iii) RSA failed to comply with the Policy's mandatory notice provision; (iv) certain categories of damages sought in the First, Second, and Third Demand Letters and/or Kenney Complaint do not constitute covered Losses; (v) certain policy exclusions operated to preclude coverage for the Claim against RSA; (vi) RSA breached its duties in the event of a claim; and (vi) RSA made material representations in the application for coverage under the Policy.

105.     Declaratory relief is therefore appropriate and proper under 28 U.S.C. § 22012202 and Fed.R.Civ.P. 57.

**A.     The Claim Against RSA Was Not "First Made" During the Policy Period**

106.     The First Demand Letter, Second Demand Letter, Third Demand Letter, and the Kenney Complaint each constitute Claims against RSA.

107.     However, inasmuch as they contain similar, identical, and/or related allegations of wrongful conduct on the part of RSA, including without limitation allegations regarding the Elective Deferral Error, Eligibility Period Error, 3% Contribution Error, and Mid-Year Restatement Error, the First Demand Letter, Second Demand Letter, Third Demand Letter, and the Kenney Complaint are each based upon and/or arise out of the same Wrongful Act or Interrelated Wrongful Acts.

108.    By operation of Section V.G. of the Policy's General Terms and Conditions, the First Demand Letter, Second Demand Letter, Third Demand Letter, and the Kenney Complaint are treated under the Policy "as a single Claim made when the earliest such Claim was first made."

109.    As the earliest Claim among them — the First Demand Letter — was made on or around July 20, 2017, Colonial is entitled to treat each of the Claims as having been made on that date.

110.    Inasmuch as the Policy period spans from May 11, 2018 to May 11, 2019, the subject Claim — made on or around July 20, 2017 — was not "first made" during the Policy Period as required under the E&O Coverage Part's insuring agreement.

111.    Because the Claim was not "first made" against RSA during the Policy Period, there is no coverage for the Claim under the Policy.

**B.      The Claim Does Not Allege "Professional Services"**

112.    The conduct alleged against RSA in the First Demand Letter, Second Demand Letter, Third Demand Letter, and the Kenney Complaint does not fall within the specifically enumerated "Professional Services" for which coverage is provided under the Policy.

113.    The conduct giving rise to the Elective Deferral Error is not among the specifically enumerated "Professional Services" for which coverage is provided under the Policy.

114.    The conduct giving rise to the Eligibility Period Error is not among the specifically enumerated "Professional Services" for which coverage is provided under the Policy.

115.    The conduct giving rise to the 3% Contribution Error is not among the specifically enumerated "Professional Services" for which coverage is provided under the Policy.

116. The conduct giving rise to the Mid-Year Restatement Error is not among the specifically enumerated "Professional Services" for which coverage is provided under the Policy.

117. Because the Claim does not allege any specifically enumerated "Professional Services" against RSA, there is no coverage for the Claim under the Policy.

**C.**     **RSA Failed to Comply with the Policy's Mandatory Notice Provision**

118. Per the Policy's mandatory notice provision, as a condition precedent to coverage, RSA was required to give notice to Colonial of any Claim made against it "as soon as practicable after [RSA] first [became] aware of such claim, but in no event later than 60 days after the end of the Policy Period."

119. According to the materials submitted to Colonial, RSA first became aware of facts that could potentially give rise to a Claim at least as early as 2013, and notice of an actual Claim against it upon receipt of the First Demand Letter on or around July 20, 2017.

120. Per the Policy's notice provision, RSA was obligated to provide notice "as soon as practicable after [RSA] first [became] aware of such Claim, but in no event later than 60 days after the end of the Policy Period."

121. RSA did not provide notice of Claim "as soon as practicable" after it first became aware of such Claim.

122. RSA did not provide notice of Claim within 60 days after the expiration of the Policy Period on May 11, 2019.

123. Because RSA failed to comply with the Policy's mandatory notice provision, there is no coverage for the Claim under the Policy.

**D.**     **Certain Categories of Damages Sought in the First, Second, and Third Demand Letters and/or Kenney Complaint Do Not Constitute Losses Covered Under the Policy**

124.    Certain categories of damages set forth in the First Demand Letter, Second Demand Letter, Third Demand Letter, and/or Kenney Complaint do not constitute Losses, as defined in the Policy, and would not be covered under the Policy under any circumstances.

125.    According to the ad _damnum_ clause in the Kenney Complaint, the categories of damages sought against RSA include, inter _alia_, punitive damages, pre-judgment and post-judgment interest.

126.    Punitive damages do not constitute Losses under the Policy.

127.    Accordingly, there would be no coverage for any punitive damages assessed against RSA in the Kenney Litigation.

128.    Pre-judgment interest and post-judgment interest do not constitute Losses under the Policy.

129.    Accordingly, there would be no coverage for any pre judgment interest or post-judgment interest assessed against RSA in the Kenney Litigation.

130.    The Policy also does not provide coverage for any Losses on account of (i) any costs to comply with an order for non-monetary relief; (ii) any taxes, fine, or penalties imposed on an Insured; (iii) any amounts not insurable under Illinois, Kentucky, or New Jersey law; or (iv) the return of any fees, charges, commissions or other compensation paid to an Insured.

131.    Inasmuch as any of the damages sought in the Kenney Complaint and/or assessed against RSA in the Kenney Litigation fall under the above-stated categories, there would be no coverage for them under the Policy.

E.    Certain Policy Exclusions Operate to Preclude Coverage, in Whole or in Part, for the Claim

132.    Exclusion A of the Policy precludes coverage for Claims "based upon, arising out of or attributable to such Insured committing any dishonest, fraudulent or criminal act or

omission or any wanton or willful violation of any statute, rule, law, or judicial or regulatory order by such Insured, if established by a judgment or other final adjudication adverse to such Insured."

133. Inasmuch as Counts II (Negligent Misrepresentation) and Count III (Fraud) of the Kenney Complaint are predicated upon RSA's purported dishonest and/or fraudulent misrepresentations, to the extent that the alleged misrepresentations at issue in are determined by judgment or final adjudication to rise to the level of fraud there would be no coverage for those claims under the Policy.

134. Exclusion S of the Policy precludes coverage for Claims "for any actual or alleged violation of the responsibilities, obligations or duties imposed on ERISA Fiduciaries as respects any Employee Benefit Plan."

135. Inasmuch as Count IV of the Complaint alleges breach of fiduciary duty on the part of RSA, that claim would be excluded from coverage under Exclusion S of the Policy.

136. Exclusion E of the Policy precludes coverage for Claims "based upon, arising out of or attributable to the liability of others assumed by any Insured under any contract or agreement, either oral or in writing; provided that this exclusion will not apply to the extent that an Insured would have been liable in the absence of such contract or agreement."

137. To the extent that any such contract exists between and/or among RSA, Kenney, and/or the other defendants in this case (or any other individual or entity, unplead at this time), whereby RSA assumed any contractual liability potentially triggered by the Kenney Litigation and/or the allegations and claims in the Kenney Complaint, there would be no coverage for that assumed contractual liability under the Policy.

138.    Exclusion J.(1) excludes coverage for "any Claim made against any Insured: ... J. based upon, arising out of or attributable to: (1) any performance or failure to perform services by the Insured as an accountant, attorney, tax preparer, enrolled agent, notary public, escrow agent mortgage broker, market maker, or specialist in any securities."

139.    The alleged conduct underlying the claims against RSA in the First, Second, and Third Demand Letters and in the Kenney Complaint arise from RSA's purported role in withholding elective deferrals, depositing elective deferrals, and/or drafting plan documents could be construed as implicating the performance of or failure to perform services by RSA as an accountant or attorney, or any of the above roles, or more generally fall within the traditional scope of those roles, Exclusion J.(1) would operate to preclude coverage for same under the Policy.

140.    Operation of the aforesaid exclusions in the Policy precludes coverage thereunder, in sum or in part, for the Claim.

F.    <u>RSA Breached its Duties Under the Policy in the Event of a Claim</u>

141.    Section VII.B.(2) of the Policy's General Terms and Conditions requires that "[t]he Insured will not, except at the Insured's own cost, voluntarily make any payment assume any obligation, incur any expenses, or admit any liability in connection with any Claim, incur any Defense Expenses, or settle any Claim without the written consent of the Company. The Insured will not take any action which may increase the Company's exposure under this Policy."

142.    According to the Second Demand Letter, the purported damages incurred by Kenney — as a result of the purported misconduct identified in the First Demand Letter — include without limitation "Most earnings for 2017 plan year and for 2018 up through the date of correction will be calculated and will result in additional earnings being added to the Plan" and

"additional [legal] expenses as we prepare the calculations for the lost earnings for the 2017 plan year and also through the date of corrections in 2018, which we anticipate to be May 1, 2018."

143.    In addition, missing contribution damages in an amount to be determined may also be contemplated as within the scope of the damages identified in the Second Demand Letter.

144.    RSA's failure to provide timely notice to Colonial of the First Demand Letter served to increase the amount of damages sought by Kenney inasmuch as the lost earnings, legal fees, and missing contribution damages were permitted to grow during the period of time that RSA concealed from Colonial the existence of a Claim.

145.    RSA's failure to provide timely notice to Colonial of the First Demand Letter precluded Colonial from engaging Kenney in meaningful discussions to resolve the Kenney-RSA dispute before the above categories of damages were permitted to grow.

146.    RSA's failure amounts to a breach of its duties under the Policy in the event of a Claim.

147.    RSA's breach of its duties in the event of a Claim has served to increase the potential exposure to Colonial (and to RSA itself) and prejudiced Colonial's ability to have negotiated a resolution of the Kenney-RSA dispute prior to the growth of Kenney's purported damages.

148.    Because RSA breached its duties in the event of a Claim, there is no coverage for the Claim under the Policy.

**G.    RSA Made Material Misrepresentations in the Policy Application**

149.    Per Section VIII.F of the Policy's General Terms and Conditions:

> The Insureds represent that the statements and particulars contained in the Application ... are true, accurate and complete. The Company has issued this Policy in reliance upon the truth of that representation, and such statements and particulars are the

basis of this Policy and are deemed material to the acceptance of the risk or the hazard assumed by the Company under the Policy.

In the event of any material misstatement, misrepresentation or omission in the Application or such other application, this Policy will be void as to:

(1) any Insured Person who knew the facts that were misstated, misrepresented or omitted in the Application or such other application, whether or not such Insured Person knew of such misstatement, misrepresentation or omission in the Application or such other application; and

(2) the Named Insured if any Executive knew the facts that were misstated, misrepresented or omitted in the Application or such other application, whether or not such Executive knew of such misstatement, misrepresentation or omission in the Application or such other application;

provided that such knowledge of an Insured Person will not be imputed to any other Insured Person.

150. On July 24, 2018, when RSA submitted its electronic application to renew the Preceding Policy and to induce Colonial to issue the Policy, (i) it was aware Kenney's allegations regarding the Elective Deferral Error, Eligibility Period Error, 3% Nonelective Contribution Error, and Mid-Year Restatement Error; (ii) received the First Demand Letter, the Second Demand Letter, and the Third Demand Letter; (iii) understood Kenney to have demanded "reimbursement of plan contributions and legal fees."

151. Upon information and belief, the renewal application was prepared and submitted by RSA's managing director, Mr. Johnson.

152. At the time that he submitted the renewal application on July 24, 2018, Mr. Johnson was personally aware of the existence of a Claim against RSA inasmuch as he prepared and/or signed the RSA Demand Response, dated April 23, 2018, responding to, inter alia, the First Demand Letter and Second Demand Letter.

153. Mr. Johnson is an Executive of RSA, a term defined at Section MI of the Policy's General Terms and Conditions to mean, in pertinent part: "any natural person who was, now is or shall become: (1) a principal, general partner, managing general partner, venture partner, administrative general partner, manager, in-house general counsel, in-house chief compliance officer; or a duly elected or appointed director, officer, trustee, or governor."

154. As set forth above in more detail, in the renewal application, RSA was posed several questions regarding its claims history.

155. RSA did not disclose the First Demand Letter, the Second Demand Letter, or the Third Demand Letter in its responses to those questions.

156. Colonial relied upon RSA's misrepresentations with respect to its claims history, existence of prior professional liability claims, and knowledge of facts and circumstances that could give rise to a claim under the renewal policy in offering renewal terms to RSA and opting to issue the Policy.

157. RSA's misrepresentations were material to Colonial's decision to issue the Policy, under which RSA now seeks coverage, and were material to Colonial's acceptance of the risk the be insured against thereunder.

158. Had RSA been truthful in its application and disclosed the existence of the Claims against it by Kenney, Colonial would not have issued the Policy, would not have offered the same renewal terms, policy terms, per-claim deductible, and/or, at a minimum, charged the same premium.

159. By operation of Section VIII.F(2) of the Policy's General Terms and Conditions set forth above, because Mr. Johnson, as an Executive of RSA, knew that certain facts in the

application were misstated, the Policy is void and RSA is not entitled to any coverage thereunder for the subject claim.

## COUNT TWO - DECLARATORY JUDGMENT
### (Declaration that the Policy is Void ab initio)

160.   Colonial realleges and incorporates by reference the preceding allegations as if fully set forth herein.

161.   On July 24, 2018, when RSA submitted its electronic application to renew the Preceding Policy and to induce Colonial to issue the Policy, (i) it was aware Kenney's allegations regarding the Elective Deferral Error, Eligibility Period Error, 3% Nonelective Contribution Error, and Mid-Year Restatement Error; (ii) received the First Demand Letter, the Second Demand Letter, and the Third Demand Letter; (iii) understood Kenney to have demanded "reimbursement of plan contributions and legal fees."

162.   Upon information and belief, the renewal application was prepared and submitted by RSA's managing director, Mr. Johnson.

163.   At the time that he submitted the renewal application on July 24, 2018, Mr. Johnson was personally aware of the existence of a Claim against RSA inasmuch as he prepared and/or signed the RSA Demand Response, dated April 23, 2018, responding to, inter alia, the First Demand Letter and Second Demand Letter.

164.   Mr. Johnson is an Executive of RSA, a term defined at Section HU of the Policy's General Terms and Conditions to mean, in pertinent part: "any natural person who was, now is or shall become: (1) a principal, general partner, managing general partner, venture partner, administrative general partner, manager, in-house general counsel, in-house chief compliance officer; or a duly elected or appointed director, officer, trustee, or governor."

165.    As set forth above in more detail, in the renewal application, RSA was posed several questions regarding its claims history.

166.    RSA did not disclose the First Demand Letter, the Second Demand Letter, or the Third Demand Letter in its responses to those questions.

167.    Colonial relied upon RSA's misrepresentations with respect to its claims history, existence of prior professional liability claims, and knowledge of facts and circumstances that could give rise to a claim under the renewal policy in offering renewal terms to RSA and opting to issue the Policy.

168.    RSA's misrepresentations were material to Colonial's decision to issue the Policy, under which RSA now seeks coverage, and were material to Colonial's acceptance of the risk the be insured against thereunder.

169.    Had RSA been truthful in its application and disclosed the existence of the Claims against it by Kenney, Colonial would not have issued the Policy, would not have offered the same renewal terms, per-claim deductible, and/or, at a minimum, charged the same premium.

170.    By operation of Section VIII.F(2) of the Policy's General Terms and Conditions set forth above, because Mr. Johnson, as an Executive of RSA, knew that certain facts in the application for the Policy were misstated, the Policy is void ab <u>initio.</u>

171.    Declaratory relief is therefore appropriate and proper under 28 U.S.C. § 22012202 and Fed.R.Civ.P. 57.

### <u>COUNT THREE - DECLARATORY JUDGMENT</u>
**(Declaration of No Coverage Under the Preceding Policy)**

172.    Colonial realleges and incorporates by reference the preceding allegations as if fully set forth herein.

173. By virtue of RSA's Claim Email, RSA has submitted a claim to Colonial purportedly seeking coverage under the Policy.

174. In responding to the claim submitted by RSA under the Policy, given the timing and sequence of the underlying events, for substantially similar reasons and out of an abundance of caution, Colonial has denied coverage for the Claim under the Preceding Policy, for which the Policy served as a renewal.

175. As such, there is a disagreement, dispute, and justiciable controversy between Colonial and RSA as to whether the Preceding Policy affords coverage to RSA for the claim, which is ripe and appropriate for judicial determination.

176. With the exception of the policy period of the Preceding Policy, which spanned from May 11, 2017 to May 11, 2018, the Preceding Policy is substantively identical to the Policy and contains the same material terms recited herein.

177. The Preceding Policy does not provide coverage for RSA's claim because, inter alia, (i) RSA failed to comply with the Preceding Policy's mandatory notice provision; (ii) the Claim against RSA does not allege "Professional Services"; (iii) certain categories of damages sought in the First, Second, and Third Demand Letters and/or Kenney Complaint do not constitute covered Losses; and (iv) certain policy exclusions operated to preclude coverage for the Claim against RSA.

178. Declaratory relief is therefore appropriate and proper under 28 U.S.C. § 22012202 and Fed.R.Civ.P. 57.

**A.      RSA Failed to Comply with the Preceding Policy's Mandatory Notice Provision**

179. Per the Preceding Policy's mandatory notice provision, as a condition precedent to coverage, RSA was required to give notice to Colonial of any Claim made against it "as soon

as practicable after [RSA] first [became] aware of such claim, but in no event later than 60 days after the end of the Policy Period."

180. According to the materials submitted to Colonial, RSA first became aware of facts that could potentially give rise to a Claim at least as early as 2013, and notice of an actual Claim against it upon receipt of the First Demand Letter on or around July 20, 2017, or otherwise during the period of the Preceding Policy.

181. Per the Preceding Policy's notice provision, RSA was obligated to provide notice "as soon as practicable after [RSA] first [became] aware of such Claim, but in no event later than 60 days after the end of the Policy Period."

182. RSA did not provide notice of Claim "as soon as practicable" after it first became aware of such Claim.

183. RSA did not provide notice of Claim within 60 days after the expiration of the Preceding Policy's period on May 11, 2018.

184. Because RSA failed to comply with the Preceding Policy's mandatory notice provision, there is no coverage for the Claim under the Preceding Policy.

**B.** The Claim Does Not Allege "Professional Services"

185. The conduct alleged against RSA in the First Demand Letter, Second Demand Letter, Third Demand Letter, and the Kenney Complaint does not fall within the specifically enumerated "Professional Services" for which coverage is provided under the Preceding Policy.

186. The conduct giving rise to the Elective Deferral Error is not among the specifically enumerated "Professional Services" for which coverage is provided under the Preceding Policy.

187.    The conduct giving rise to the Eligibility Period Error is not among the specifically enumerated "Professional Services" for which coverage is provided under the Preceding Policy.

188.    The conduct giving rise to the 3% Contribution Error is not among the specifically enumerated "Professional Services" for which coverage is provided under the Preceding Policy.

189.    The conduct giving rise to the Mid-Year Restatement Error is not among the specifically enumerated "Professional Services" for which coverage is provided under the Preceding Policy.

190.    Because the Claim does not allege any specifically enumerated "Professional Services" against RSA, there is no coverage for the Claim under the Preceding Policy.

**H.**          **Certain Categories of Damages Sought in the First, Second, and Third Demand Letters and/or Kenney Complaint Do Not Constitute Losses Covered Under the Preceding Policy**

191.    Certain categories of damages set forth in the First Demand Letter, Second Demand Letter, Third Demand Letter, and/or Kenney Complaint do not constitute Losses, as defined in the Preceding Policy, and would not be covered under the Preceding Policy under any circumstances.

192.    According to the ad damnum clause in the Kenney Complaint, the categories of damages sought against RSA include, inter alia, punitive damages, pre judgment and post-judgment interest.

193.    Punitive damages do not constitute Losses under the Preceding Policy.

194.    Accordingly, there would be no coverage for any punitive damages assessed against RSA in the Kenney Litigation.

195.    Pre judgment interest and post-judgment interest do not constitute Losses under the Preceding Policy.

196.    Accordingly, there would be no coverage for any pre judgment interest or post-judgment interest assessed against RSA in the Kenney Litigation.

197.    The Preceding Policy also does not provide coverage for any Losses on account of (i) any costs to comply with an order for non-monetary relief; (ii) any taxes, fine, or penalties imposed on an Insured; (iii) any amounts not insurable under Illinois, Kentucky, or New Jersey law; or (iv) the return of any fees, charges, commissions or other compensation paid to an Insured.

198.    Inasmuch as any of the damages sought in the Kenney Complaint and/or assessed against RSA in the Kenney Litigation fall under the above-stated categories, there would be no coverage for them under the Precediong Policy.

C.          Certain Preceding Policy Exclusions Operate to Preclude Coverage, in Whole or in Part, for the Claim

199.    Exclusion A of the Preceding Policy precludes coverage for Claims "based upon, arising out of or attributable to such Insured committing any dishonest, fraudulent or criminal act or omission or any wanton or willful violation of any statute, rule, law, or judicial or regulatory order by such Insured, if established by a judgment or other final adjudication adverse to such Insured."

200.    Inasmuch as Counts II (Negligent Misrepresentation) and Count III (Fraud) of the Kenney Complaint are predicated upon RSA's purported dishonest and/or fraudulent misrepresentations, to the extent that the alleged misrepresentations at issue in are determined by judgment or final adjudication to rise to the level of fraud there would be no coverage for those claims under the Preceding Policy.

201.    Exclusion S of the Preceding Policy precludes coverage for Claims "for any actual or alleged violation of the responsibilities, obligations or duties imposed on ERISA Fiduciaries as respects any Employee Benefit Plan."

202.    Inasmuch as Count IV of the Complaint alleges breach of fiduciary duty on the part of RSA, that claim would be excluded from coverage under Exclusion S of the Preceding Policy.

203.    Exclusion E of the Preceding Policy precludes coverage for Claims "based upon, arising out of or attributable to the liability of others assumed by any Insured under any contract or agreement, either oral or in writing; provided that this exclusion will not apply to the extent that an Insured would have been liable in the absence of such contract or agreement."

204.    To the extent that any such contract exists between and/or among RSA, Kenney, and/or the other defendants in this case (or any other individual or entity, unplead at this time), whereby RSA assumed any contractual liability potentially triggered by the Kenney Litigation and/or the allegations and claims in the Kenney Complaint, there would be no coverage for that assumed contractual liability under the Preceding Policy.

205.    Exclusion J.(1) excludes coverage for "any Claim made against any Insured: ... J. based upon, arising out of or attributable to: (1) any performance or failure to perform services by the Insured as an accountant, attorney, tax preparer, enrolled agent, notary public, escrow agent mortgage broker, market maker, or specialist in any securities."

206.    The alleged conduct underlying the claims against RSA in the First, Second, and Third Demand Letters and in the Kenney Complaint arise from RSA's purported role in withholding elective deferrals, depositing elective deferrals, and/or drafting plan documents could be construed as implicating the performance of or failure to perform services by RSA as an accountant or attorney, or any of the above roles, or more generally fall within the traditional scope of those roles, Exclusion J.(1) would operate to preclude coverage for same under the Preceding Policy.

207.    Operation of the aforesaid exclusions in the Preceding Policy precludes coverage thereunder, in sum or in part, for the Claim.

**D.**    RSA Breached its Duties Under the Preceding Policy in the Event of a Claim

208.    Section VII.B.(2) of the Preceding Policy's General Terms and Conditions requires that "[t]he Insured will not, except at the Insured's own cost, voluntarily make any payment assume any obligation, incur any expenses, or admit any liability in connection with any Claim, incur any Defense Expenses, or settle any Claim without the written consent of the Company. The Insured will not take any action which may increase the Company's exposure under this Policy."

209.    According to the Second Demand Letter, the purported damages incurred by Kenney — as a result of the purported misconduct identified in the First Demand Letter — include without limitation "Most earnings for 2017 plan year and for 2018 up through the date of correction will be calculated and will result in additional earnings being added to the Plan" and "additional [legal] expenses as we prepare the calculations for the lost earnings for the 2017 plan year and also through the date of corrections in 2018, which we anticipate to be May 1, 2018."

210.    In addition, missing contribution damages in an amount to be determined may also be contemplated as within the scope of the damages identified in the Second Demand Letter.

211    RSA's failure to provide timely notice to Colonial of the First Demand Letter served to increase the amount of damages sought by Kenney inasmuch as the lost earnings, legal fees, and missing contribution damages were permitted to grow during the period of time that RSA concealed from Colonial the existence of a Claim.

212.    RSA's failure to provide timely notice to Colonial of the First Demand Letter precluded Colonial from engaging Kenney in meaningful discussions to resolve the Kenney-RSA dispute before the above categories of damages were permitted to grow.

213.    RSA's failure amounts to a breach of its duties under the Preceding Policy in the event of a Claim.

214.    RSA's breach of its duties in the event of a Claim has served to increase the potential exposure to Colonial (and to RSA itself) and prejudiced Colonial's ability to have negotiated a resolution of the Kenney-RSA dispute prior to the growth of Kenney's purported damages.

215.    Because RSA breached its duties in the event of a Claim, there is no coverage for the Claim under the Preceding Policy.

RELIEF REQUESTED

WHEREFORE, Colonial prays for the following relief:

1.    On Count One — Declaratory Judgment, a declaration that Colonial owes no coverage to RSA under the Policy; and

2.    On Count Two — Declaratory Judgment, a declaration that the Policy is void ab initio; and

3.    On Count Three — Declaratory Judgment, a declaration that Colonial owes no coverage to RSA under the Preceding Policy; and

4.    For attorneys' fees and costs, as allowed by law; and

5.    For such other and further relief as deemed just and proper.


/s/ Ralph J. Kooy_____


Ralph J. Kooy, Esq.
rkooy@leolawpc.com
The Law Offices of T. Scott Leo P.C.
100 N. LaSalle St. Suite 514
Chicago, IL 60602
Telephone: (312) 857-0910
Facsimile: (312) 857-1240